(Decided 18th December, 1889.)

GEORGE T. NICHOLSON *vs.* EDWARD H. CONDON.

*Specific performance—Married woman—Wife's title—Bona fide Purchaser—Registration—Effect of Notice of Fraud.*

In a proceeding for the specific performance of a contract for the purchase of certain leasehold property, the fact set up in the answer, and relied on as a defence, that the grantor of the complainant was a married woman, and that she had acquired the property during her coverture, is no ground whatever for impeaching the title of the complainant.

When a deed, valid, and without suspicion of infirmity on its face, is regularly recorded. it conveys a valid legal title, and this title passes to a *bona fide* purchaser. This result is by force of the registration laws, and they apply to purchases by and from married women, as well as to those by and from other persons.

If, however, the purchaser has notice from any quarter of a fraud which would defeat the deed, he takes the title subject to the effect of this fraud, and it will be vitiated in his hands, in the same manner and to the same extent as in the hands of his grantor.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. The *pro forma* decree from which this appeal was taken, was passed by Judge DENNIS.

The cause was argued for the appellant before ALVEY, C. J., STONE, ROBINSON, BRYAN, and McSHERRY, J., and submitted on brief for the appellee.

*Ferdinand C. Dugan,* for the appellant.

*Luther M. Reynolds,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

This was a bill for the specific performance of a contract for the purchase of certain leasehold property in the City of Baltimore. The defendant in his answer makes defence as follows: "And this defendant further answering the bill in this respect, states that the complainant acquired the said property by purchase of and proper conveyance, from one Maggie T. McCauley, then wife of David McCauley, dated December 24th, 1888, and that said Maggie T. McCauley acquired the same during her coverture with him, the said David McCauley, by a conveyance thereof from one Boston Fear and his wife. And this defendant further answering the bill, says, having been advised, as matter of law, that by a presumption of law, all property acquired by a married woman during her coverture, was paid for by her husband, or from his means; and that the burden of proof is on her to show that she paid for it out of money belonging to her separate estate, the title of a

married woman to property thus acquired, is, for that reason, as a matter of fact, unmerchantable in the market; and the complainant's title to the property he proposes to sell unto this respondent, being thus acquired, is unmerchantable in the hands of the said Maggie T. McCauley, and is not now merchantable, as charged in the bill; wherefore he declined to make the cash payment therefor, and to accept a conveyance of the property." The evidence shows that no other objection is made to the title of the complainant. The Court decreed a specific performance.

The first section of the forty-fifth Article of the Code has been in force with very little change for nearly thirty years. It enables a married women to acquire real and personal property by purchase and in other ways, "provided that no acquisition of property passing to the wife from the husband after coverture shall be valid, if the same has been made or granted to her in prejudice of the rights of his subsisting creditors." If made in this way, a purchase by the wife, or in the name of the wife, would be fraudulent and void as against them. And of course the deed would be set aside and annulled, on proper proceedings to that end. But it has never been supposed that a *bona fide* purchaser without notice would not obtain a good title, although he may have purchased from a fraudulent grantee. When it is said that deeds in fraud of creditors are void, the doctrine must be understood with the limitations which are necessarily imposed by the well settled principles of law and equity. Judge Story in a few felicitous words thus states the result of all the learning on this subject: 1 *Story's Equity Jurisprudence*, *sec.* 381: "It is proper to be remarked that although voluntary and other conveyances in fraud of creditors are thus declared to be utterly void, yet they are so, only so far as the original parties and their privies and others claiming under them, who have notice of the fraud,

Nicholson *vs.* Condon.

are concerned. For *bona fide* purchasers for a valuable consideration, without notice of the fraudulent or voluntary grant, are of such high consideration that they will be protected, as well at law as in equity, in their purchases.'' No possible reason can be suggested why a purchaser from a married woman should stand on a footing different from that of a purchaser from any other grantee, whose title may be assailable for fraud of creditors. We therefore hold that the facts stated in the answer show no reason whatever for impeaching the title of the complainant.

We were informed at the argument that an opinion prevails with many members of the profession adverse to titles derived from married women; and it is attributed to what was said by this Court in *Levi vs. Rothschild*, 69 *Md.*, 348. The effect of a decision cannot be determined by considering a detached passage, wrested from its natural connection. We must know the nature of the question before the Court, and see how it has been decided; the opinion must then be read as an exposition of the law on the matter in controversy. Any other rule of interpretation is distorted and unnatural. In *Levi vs. Rothschild* the allegation was that one Levi purchased certain leasehold estate with his own money, and for the purpose of defrauding his creditors caused the title to be made in the name of his wife. The proceeding was directly against the husband and wife. The husband being shown to be insolvent, one of the questions was as to the burden of proof; and on this point the language of the Court was as follows: ''It can hardly be necessary to say, that where a conveyance is made to the wife of an insolvent debtor, the burden of proof is upon the wife to show that the property was purchased and paid for out of money belonging to her; and that in the absence of such proof, the presumption is that the husband furnished the means of payment.'' In thus declar-

ing the law, the Court follows the decision of the Supreme Court of the United States in *Seitz vs. Mitchell,* 94 *U. S.,* 580, decided in 1876. The Supreme Court say "Purchases of either real or personal property, made by the wife of an insolvent debtor during coverture, are justly regarded with suspicion, unless it clearly appears that the consideration was paid out of her separate estate. Such is the community of interest between husband and wife; such purchases are so often made a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use; and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and the wife there is, and there should be,. a presumption against her, which she must overcome by affirmative proof. Such has always been the rule of the common law; and the rule continues, though statutes have modified the doctrine that gave to the husband absolutely the personal property of the wife in possession, and the right to reduce into his possession and ownership all her *choses in action.*" This decision was adopted by this Court in *Hinkle vs. Wilson,* 53 *Md.,* 287, decided at October Term, 1879. The opinion of the Supreme Court is founded on principles which are reasonable and just. It has been before the profession for thirteen years, and its authority has never been shaken. We have twice approved it, and it is our purpose to adhere to it in the future. We perceive that in each of these three cases the title to the property was standing in the name of the wife at the time the suit was brought to set aside the deed, and she was a party defendant. In *Green vs. Early and Townshend,* 39 *Md.,* 223, she had disposed of the property, and the question was presented against her assignee. It appeared that a husband had sold his real estate and conveyed it by a joint

deed of himself and wife, and simultaneously took from the vendee a mortgage of the land to his wife to secure a portion of the purchase money, together with certain single bills payable also to the wife. Three days after this transaction the mortgage and single bills were all assigned to one Early, the assignment being executed by both husband and wife. This Court held that Early must be considered as having notice of all the facts disclosed by the mortgage, and also by the deed recited in it. These instruments showed that the land was the property of the husband and not of the wife, and that the mortgage and single bills, given to secure the purchase money due to the husband, were by his direction made to the wife. As the wife was a volunteer, having given no valuable consideration, the property in her hands was liable to her husband's debts, if he had not other sufficient property with which they could be paid. The facts showing the infirmity of the wife's title were all apparent on the face of the recorded deed and mortgage; the law therefore charged her assignee with notice of them, and gave him the same title which she had and no other or better. *Milholland vs. Tiffany*, 64 *Md.*, 455, was a case of the same kind. Tiffany acquired title from a married woman, and she held the property by a voluntary deed from her husband, showing on its face that it was made in consideration of love and affection. The deed to the married woman was fraudulent and void as against her husband's creditors existing at the time of the deed, because he had not sufficient property to pay them. The registration of the deed to the wife, imparted notice to her assignee of everything appearing on its face, and he took the title in the same plight and condition in which she held it. This Court has had occasion to consider the case where the assignee of a married woman had no notice of the circumstances which impeached her title. In *Farmers Bank of Vir-*

*ginia, &c. vs. Brooke, Trustee, &c.*, 40 *Md.*, 249, Bartholow was indebted to Wm. Pinkney Brooke, who was then insolvent; at Brooke's request Bartholow gave his notes for the amount of the debt to a trustee for his wife, and executed a mortgage to secure them. These notes were transferred to Bowie. The question is thus decided in the opinion of the Court: "As these notes were given for a debt due by Bartholow to Wm. Pinkney Brooke, who was then insolvent, the transfer of the indebtedness to his wife was in prejudice of the rights of his then subsisting creditors, and was void as against them so far as she and her trustee were concerned. But the notes were transferred to W. B. Bowie, and he would be entitled to them and to the mortgage given to secure their payment, unless he received them without consideration, or had knowledge that they were given to the trustee of Mrs. Brooke for an indebtedness due to Wm. Pinkney Brooke, and that the transfer of this indebtedness by him to his wife was in prejudice of the rights of his creditors. There is nothing on the face of the notes or mortgage to indicate the real facts of the transaction, nor was any proof whatever offered tending to show that Bowie did not pay value for the notes, or that he had any notice that they were given for a debt due to Wm. Pinkney Brooke, or that the transaction was in prejudice of the rights of Wm. Pinkney Brooke's creditors. It was incumbent upon the plaintiff to adduce proof of these facts, and having failed to do so, the presumption is that Bowie is the *bona fide* holder of the notes for consideration, and without notice." When a deed, valid and without suspicion of infirmity on its face is regularly recorded, it conveys a valid legal title, and this title passes to a *bona fide* purchaser. This result is by force of the registration laws, and they apply to purchases by and from married women, as well as to those by and from other persons.

If however the purchaser has notice from any quarter of a fraud which would defeat the deed, he takes the title subject to the effect of this fraud, and it will be vitiated in his hands, in the same manner and to the same extent as in the hands of his grantor. This is a wise and salutary doctrine, and it is to be hoped that it will never be changed.

We have made these remarks in the hope of removing any misapprehension which may exist as to the opinion of the Court on the questions decided in the cases which have been cited.

*Decree affirmed, with costs.*

(Decided 18th December, 1889.)